UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER SCOTT GATTIS, | ) | Case No. CV 15-03271-JEM |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On April 30, 2015, Christopher Scott Gattis ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits.  The Commissioner filed an Answer on August 13, 2015.  On December 4, 2015, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and this case remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 50-year-old male who applied for Social Security Disability Insurance benefits on December 15, 2009, alleging disability beginning October 31, 2007. (AR 101.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 31, 2007, the alleged onset date. (AR 103.)

Plaintiff's claim was denied initially on May 24, 2010, and on reconsideration on September 30, 2010. (AR 101.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Dale A. Garwal on December 19, 2011 in Santa Barbara, California. (AR 101.) Plaintiff appeared and testified at the hearing and was represented by counsel. (AR 101.) Vocational expert ("VE") John C. Meyers also appeared and testified at the hearing. (AR 101.)

The ALJ issued an unfavorable decision on January 23, 2012. (AR 101-108.) On June 19, 2013, the Appeals Council reversed the unfavorable decision and remanded the case for further administrative proceedings. (AR 112-115.)

A remand hearing was held before ALJ Dale A. Garwal on November 4, 2013, in Santa Barbara, California. (AR 37.) Plaintiff appeared and testified at the hearing. (AR 37.) Plaintiff was represented by counsel. (AR 37.) VE Sharon Spaventa also appeared and testified at the hearing. (AR 37.)

The ALJ issued an unfavorable decision on November 22, 2013. (AR 37-45.) The Appeals Council denied review on March 6, 2015. (AR 1-4.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises only the following disputed issue as ground for reversal and remand:

1.      Whether the ALJ properly evaluated Christopher Gattis' mental impairments.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846

2

(9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290.  Third, the ALJ must

determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 31, 2007, through his date last insured of December 31, 2012.  (AR 39.)

At step two, the ALJ determined that Plaintiff, through the date last insured, had the following medically determinable severe impairments: depression and anxiety, specifically posttraumatic stress disorder.  (AR 39.)

At step three, the ALJ determined that Plaintiff, through the date last insured, did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments.  (AR 40.)

The ALJ then found that Plaintiff, through the date last insured, had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitation: limitation to the performance of simple routine tasks.  (AR 41-43.)  In determining the above RFC, the ALJ made an adverse credibility determination, which Plaintiff does not challenge here.  (AR 39-43.)

At step four, the ALJ found that Plaintiff, through the date last insured, was unable to perform any past relevant work as an electronics mechanic and customer service representative.  (AR 43.)  The ALJ, however, also found that, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could have performed, including the jobs of janitor and hand packer.  (AR 44.)

Consequently, the ALJ found that Claimant, through the date last insured, was not disabled, within the meaning of the Social Security Act.  (AR 45.)

**DISCUSSION**

The ALJ's decision must be reversed and remanded for further proceedings.  The ALJ's treatment of the medical evidence regarding Plaintiff's mental impairments is marred by legal error and not supported by substantial evidence.  The ALJ also failed to develop the record properly.

**A.     Relevant Federal Law**

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms.  See SSR 96-5p; 20

1   C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must consider all relevant evidence

2   in the record, including medical records, lay evidence, and the effects of symptoms, including

3   pain reasonably attributable to the medical condition.  Robbins, 446 F.3d at 883.

4          In evaluating medical opinions, the case law and regulations distinguish among the

5   opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2)

6   those who examine but do not treat the claimant (examining physicians); and (3) those who

7   neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20

8   C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In

9   general, an ALJ must accord special weight to a treating physician's opinion because a treating

10  physician "is employed to cure and has a greater opportunity to know and observe the patient

11  as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If

12  a treating source's opinion on the issues of the nature and severity of a claimant's impairments

13  is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is

14  not inconsistent with other substantial evidence in the case record, the ALJ must give it

15  "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

16         Where a treating doctor's opinion is not contradicted by another doctor, it may be

17  rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the

18  treating physician's opinion is contradicted by another doctor, such as an examining physician,

19  the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons,

20  supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495

21  F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating

22  physician's opinion is contradicted by an examining professional's opinion, the Commissioner

23  may resolve the conflict by relying on the examining physician's opinion if the examining

24  physician's opinion is supported by different, independent clinical findings.  See Andrews v.

25  Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an

26  uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing

27  reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's

28  opinion is contradicted by another physician's opinion, an ALJ must provide specific and

1   legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot

2   by itself constitute substantial evidence that justifies the rejection of the opinion of either an

3   examining physician or a treating physician"; such an opinion may serve as substantial

4   evidence only when it is consistent with and supported by other independent evidence in the

5   record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

6      **B.   Analysis**

7      The ALJ determined that Claimant has the medically determinable severe impairment of

8   depression and anxiety, specifically post-traumatic stress disorder.  (AR 39.)  The ALJ further

9   determined that Claimant had the RFC to perform a full range of work at all exertional levels,

10  but with a non-exertional limitation to simple, routine tasks.  (AR 40-41.)  With this RFC, the

11  ALJ concluded that Plaintiff was not precluded from all work and not disabled.  (AR 44-45.)

12  The ALJ's conclusion regarding Plaintiff's mental RFC is not supported by substantial evidence.

13     The ALJ's mental RFC assessment rests on the opinion of State agency medical

14  consultant Helen Patterson, Ph.D., who did not examine Plaintiff.  (AR 42.)  Dr. Patterson

15  submitted a Psychiatric Review and a Mental RFC Assessment, both dated May 18, 2010.  (AR

16  290-306.)  In these reports, Dr. Patterson assessed affective disorders resulting in moderate

17  limitations in the ability to maintain concentration, persistence and pace and in the ability to

18  complete a normal workday week without interruption from psychologically based symptoms

19  and perform at a consistent pace without an unreasonable number and length of rest periods.

20  (AR 42.)  Claimant was considered capable of maintaining normal concentration for 2-hour

21  periods within a normal workday.  (AR 42.)  The Claimant was considered capable of sustaining

22  a normal workday/week.  (AR 42.)  The ALJ concluded that Dr. Patterson's opinion assessing

23  limitations to simple routine tasks was "fully credible and given great weight based upon

24  consistency with the record, area of specialization and supportability with medical signs and

25  laboratory findings."  (AR 43.)

26     A non-examining physician opinion, however, cannot by itself serve as substantial

27  evidence unless it is consistent with and supported by other independent evidence of record.

28  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.  The ALJ's decision contains little

reference to other independent consistent evidence necessary for Dr. Patterson's opinion to constitute substantial evidence; indeed, the decision fails to discuss or even mention inconsistent evidence that precludes consideration of Dr. Patterson's opinion as substantial evidence.  For example, the most extensive medical records are those of Ventura County Behavioral Health ("VCBH"), including those of Dr. Celia Woods.  (AR 42.)  These records indicate years of outpatient services for symptoms of chronic sadness, chronic suicidal ideation, sleep disturbance, and panic attacks.  (AR 366, 371.)  As the ALJ acknowledges, VCBH treating physicians diagnosed major depressive disorder, recurrent, severe, without psychotic features, and panic disorder with agoraphobia.  (AR 42.)  These diagnoses are obviously broader and more severe than recognized by Dr. Patterson and by the ALJ.  Additionally, on June 4, 2010, Dr. Woods found Christopher Gattis to be "severely impaired."  (AR 352.)  Then, on July 2, 2010, Dr. Woods reported functional impairments of "unable to maintain employment," unable to establish and maintain relationships, poor emotional control, and poor anger management.  (AR 419.)  The only psychiatric evidence in the record is from VCBH and Dr. Patterson's opinions are not consistent with that evidence.  The ALJ's assertion that mental findings are "largely within normal limits" is simply not a reasonable description of the VCBH psychiatric records, which are considerably more mixed and severe than the ALJ acknowledges.  Dr. Patterson's opinion, coming from a non-examining medical source, cannot be used to reject the treating physician opinions from VCBH.  See Lester, 81 F.3d at 830-31; see also Morgan, 169 F.3d at 600.

Even more problematic is the failure of Dr. Patterson and the ALJ to discuss Plaintiff's global assessment of functioning ("GAF") scores.  A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.  Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  There are numerous findings in the VCBH medical records from May 2009 to January 2011 of GAF scores of 48 for Plaintiff.  (AR 371, 405, 413, 419.)  GAF scores between 41 and 50 indicate "serious symptoms" or "any serious impairment in social, occupational or school functioning."  See, e.g., Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014).  The VE at the first

1  hearing indicated that a GAF score of 48 "represents a serious functional impairment" (AR 93)

2  and that Claimant would not be able to do any jobs with a GAF score of 48.  (AR 94.)  This is

3  the entire exchange:

4      Q: If we refer to Exhibit 7F from Ventura County Behavioral Health,

5      the records there indicate a GAF score of 48.  Do you have an

6      understanding as to the meaning of a GAF score of 48 when it comes to

7      functioning on the job?

8      A: I do.

9      Q: And what is your understanding, Mr. Meyers?

10     A: It represents a serious functional impairment.

11     Q: Would he be able to do any jobs in your opinion with a GAF score

12     of 48?

13     A: No.

14  The January 23, 2012, ALJ decision makes no reference to this testimony in considering

15  Plaintiff's vocational capabilities.  (AR 106-07.)  The Appeals Council specifically directed the

16  ALJ on remand to clarify the effect of Plaintiff's assessed limitations on his occupational base.

17  (AR 114-115.)

18      Although GAF scores, standing alone, do not control determinations of whether a

19  person's mental impairments are disabling, they may be "a useful measurement."  Id.;  see also

20  Vasquez v. Astrue, 572 F.3d 586, 694-96 (9th Cir. 2009) (citing GAF scores in analyzing mental

21  impairments).  Plaintiff's GAF scores coupled with the VE's testimony, however, are plainly

22  inconsistent with Dr. Patterson's RFC.  Nowhere in Dr. Patterson's comments or the ALJ's

23  decision is there any reference to Plaintiff's GAF scores.  Although Plaintiff focused extensively

24  on his GAF scores in the opening portion of his Joint Statement, the Commissioner failed to

25  discuss those scores or the VE's testimony in her portion of the Joint Statement.  The Court

26  need not reach any final RFC determination based on Plaintiff's GAF scores and the VE's

27  opinion.  At this stage, the Court holds only that Dr. Patterson's RFC assessment is not

28  supported by independent evidence and cannot serve as substantial evidence.

1    The only other medical evidence of note[1] regarding Claimant's mental impairments is the

2    opinion of Dr. Adam Burdick, which was submitted by Plaintiff.  (AR 42, 492.)  Dr. Burdick

3    diagnosed Claimant with major depressive disorder, recurrent, severe, without psychotic

4    features and panic disorder with agoraphobia.  (AR 492.)  Dr. Burdick found Claimant

5    extremely limited in the ability to relate and interact with supervisors and co-workers, deal with

6    the public, and withstand the pressures associated with an 8 hour workday.  (AR 42, 492.)  He

7    was found markedly limited in the ability to maintain concentration and attention for at least 2

8    hour increments, and moderately limited in the ability to understand, remember and carry out

9    simple job instructions.  (AR 42, 492.)  Although Dr. Burdick's assessments conflict with

10   Dr. Patterson's, the ALJ properly discounted Dr. Burdick's opinions because they are largely

11   check-box opinions unsupported by the documentary evidence.  Batson v. Comm'r of the Soc.

12   Sec. Adm., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly discounted treating physician

13   opinions in the form of a checklist without explanation or supportive objective evidence).

14        Dr. Burdick, however, did provide a comment about medication side effects that does

15   have some support on the medical record, as well as from Plaintiff and his wife.  Dr. Burdick

16   noted that "Patient on multiple medications, some of which are sedating and would limit work

17   performance."  (AR 492.)  The record indicates a long list of medications for Plaintiff for both his

18   physical and mental impairments, including Wellbutrin, Lexapro, Klonopin, and Abilify for his

19   mental impairments.  (AR 393-399.)  Some medical records indicate medication side effects

20   such as inability to sleep, low energy, tiredness, and the need to nap.  (AR 354, 356, 420, 422,

21   498, 503, 508, 522, 524.)  The VE at the first hearing indicated these effects could preclude

22   work.  (AR 93.)  Other records indicated no side effects.  (AR 501, 506.)  Plaintiff, moreover,

23   asserted side effects of dizziness, grogginess, and tiredness (AR 90), and his wife confirms his

24   ─────────────────

25   [1]   The Commissioner also relies on the opinion of State agency reviewing physician Dr. L.
     Bobba for his finding of no deterioration in Plaintiff's mental condition.  (AR 392.)  The ALJ,

26   however, relied on Dr. Bobba only in regard to Plaintiff's physical impairments.  (AR 43.)  The
     Court is limited to reviewing the reasons and evidence contained in the ALJ's decision.  Connett

27   v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  In any event, Dr. Bobba apparently is a
     pathologist, not a psychiatrist or a psychologist, and his opinion, like Dr. Patterson's, is not

28   substantial evidence because it is not supported by independent evidence.

1  difficulty sleeping as well as difficulty following instructions, completing tasks, and remembering

2  and concentrating.  (AR 42.)  The ALJ stated that he gave weight to the allegations of

3  Claimant's wife to the extent consistent with objective documentation (AR 43), but as noted

4  there are medical records that support the limitations indicated by Ms. Gaddis.  Indeed, one

5  record indicates Plaintiff is still depressed even on a maximum dose of 3 medications and

6  therapy.  (AR 518.)

7        An ALJ should consider all factors that might have a significant impact on an individual's

8  ability to work, including side effects of medications.  SSR 96-7p; Erickson v. Shalala, 9 F.3d

9  813, 817-18 (9th Cir. 1993) (citing Varney v. Secretary of the HHS, 846 F.2d 581, 585 (9th Cir.

10  1987) (superseded by statute on other grounds).  Under Varney, an ALJ may not reject a

11  claimant's testimony about the subjective limitations of medication side effects without making

12  specific findings similar to those required for excess pain testimony.  Varney, 846 F.2d at 585.

13  Medication side effects, however, can be disregarded if unsupported by medical findings.

14  Gallegos v. Astrue, 2010 WL 330242, at *2-*3 (C.D. Cal. Jan. 20, 2010).  Moreover, those side

15  effects must be severe enough to interfere with the ability to work.  Osenbrock v. Apfel, 240

16  F.3d 1157, 1164 (9th Cir. 2001).

17        Here, there are medical findings of side effects that may affect work performance that

18  cannot be disregarded.  The ALJ's only comment about medication effects is that Plaintiff

19  showed improvement (AR 42), a finding offset by other medical records indicating continuing

20  depression despite medications and therapy.  (AR 518.)  The record does show improvement

21  at times, at other times not.  The record also shows side effects at times, at other times not.

22  Neither Dr. Patterson nor the ALJ, however, discussed medication side effects.  That was error.

23        Another error was the ALJ's failure to obtain an additional consulting opinion.  The

24  Appeals Council's remand order indicated that the ALJ should obtain additional evidence which

25  "may include, if warranted and available, a consultative mental status examination."  (AR 114.)

26  The ALJ failed to do so, continuing to rely on Dr. Patterson's opinions from the first decision in

27  this case.  (AR 105, 106.)  As a result, the ALJ did not fully and fairly develop the record.  In

28  Social Security cases, the ALJ has a special, independent duty to develop the record fully and

1  fairly and to assure that the Claimant's interests are considered.  Tonapetyan v. Halter, 242

2  F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288; Brown v. Heckler, 713 F.2d at 441,

3  443 (9th Cir. 1983).  The ALJ has a basic duty to inform himself about facts relevant to his

4  decision.  Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).  The

5  ALJ's duty to develop the record exists even when the claimant is represented by counsel.

6  Tonapetyan, 242 F.3d at 1150.  Ambiguous evidence or the ALJ's own finding that the record is

7  inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an

8  appropriate inquiry.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.

9       In this case, the record is inadequate in regard to the severity of Plaintiff's mental

10  impairments.  Dr. Patterson's opinions are not consistent with independent evidence and, thus,

11  are not substantial evidence.  The VCBH evidence is ambiguous and inconsistent regarding

12  medication efficacy and side effects and their bearing on work performance.  Dr. Burdick's

13  comment about effects on work performance should not have been rejected.  All of these

14  issues could have been resolved by obtaining a fresh consultative mental status examination,

15  as suggested by the Appeals Council.  The failure to do so was error.

16       It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities

17  in the record.  Andrews, 53 F.3d at 1039.  Where the ALJ's interpretation of the record is

18  reasonable, it should be not be second-guessed.  Rollins v. Massanari, 261 F.3d 853, 857 (9th

19  Cir. 2001).  Here, however, the ALJ's evaluation of the medical evidence regarding the severity

20  of Plaintiff's mental impairments is unreasonable and one-sided, fails to acknowledge or

21  discuss relevant evidence bearing on disability, and gives weight to non-examining physician

22  opinions that are not supported by independent evidence of record.  Moreover, there was a

23  failure to develop the record properly.

24       The Court is not expressing an opinion on whether Plaintiff is disabled or not, only that

25  the ALJ's mental RFC is not supported by substantial evidence.  The ALJ's nondisability

26  determination is not supported by substantial evidence nor free from legal error.

27

28

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this case for further proceedings in accordance with this Memorandum Opinion and Order and with law.

DATED: <u>January 27, 2016</u>                    <u>          /s/ John E. McDermott          </u>
                                                        JOHN E. MCDERMOTT
                                                        UNITED STATES MAGISTRATE JUDGE